IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED
JUL 1 7 2013
U. S. DISTRICT COURT
E. DIST. OF MO.
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) NO. |
| | ) 4:13CR00301CEJ |
| RICHARD SADDLER, | ) |
| Defendant. | ) |

## INDICTMENT

**THE GRAND JURY CHARGES:**

### COUNT 1

### WIRE FRAUD

A. INTRODUCTION

At all times relevant to the Indictment, and specifically as to Counts 1, 2, and 3:

1. Omicron Capital, LLC (hereinafter "Omicron") was a company in the purported business of assisting individuals in the refinancing of commercial and real estate loans. Omicron had its primary office located in St. Louis, Missouri.

2. The defendant, **RICHARD SADDLER**, was the owner and president of Omicron, working out of the St. Louis office which was located within his personal residence. **SADDLER** ran the day to day operations of Omicron, solicited customers for Omicron, and was solely involved in handling the finances of Omicron. **SADDLER** was the sole authorized signator on Omicron's two operating bank accounts, located at West Community Credit Union in St. Louis, Missouri (under

the name First Capital/Richard Saddler) and Central Bank of St. Louis, also located in St. Louis, Missouri (under the name Omicron Capital, LLC).

B.    SCHEME TO DEFRAUD

3.    Beginning on or about January 1, 2010 and continuing through on or about March 31, 2012, both dates being approximate and inclusive, in the Eastern District of Missouri and elsewhere, defendant,

**RICHARD SADDLER,**

along with others known and unknown to the Grand Jury, devised, intended to devise, and knowingly participated in a scheme to defraud and obtain money from several Omicron customers, including but not limited to P.K., L.C., G.H., J.B., and J.A., in an approximate amount of $250,000, by means of materially false and fraudulent pretenses, representations, and promises.

4.    It was a part of the scheme that defendant **RICHARD SADDLER** solicited customers for Omicron with the false promises and false representations that Omicron would find suitable funding to refinance those customers' commercial and real estate loans.

5.    It was a further part of the scheme that defendant **RICHARD SADDLER** falsely represented to one and more Omicron customers that funds provided by the customers to Omicron would be used solely for any required downpayment relative to those customers' promised refinancing transactions. It was a further part of the scheme that defendant **RICHARD SADDLER** falsely represented to one and more Omicron customers that funds provided by the customers to Omicron would be used solely for any required appraiser fees relative to those customers' promised refinancing transactions.

6. It was a further part of the scheme that, based upon defendant **RICHARD SADDLER's** false representations and false promises, several Omicron customers provided funds to Omicron believing that those funds would be used for downpayments and appraiser fees relative to their refinancing transactions.

8. It was a further part of the scheme that, unbeknownst to the Omicron customers, and despite defendant **RICHARD SADDLER's** representations and promises, defendant **RICHARD SADDLER** used approximately $250,000.00 of the funds provided by Omicron customers for his own personal use, unrelated to the business or operations of Omicron, and unrelated to the customers' refinancing transactions, including for the payment of the mortgage on his own personal residence, which mortgage was in foreclosure proceedings, airline tickets for personal travel, personal dining and entertainment, and other personal day to day living expenses. Defendant **RICHARD SADDLER** used none of the victim customers' funds for the promised downpayments and appraiser fees. Defendant **RICHARD SADDLER** never obtained funding for any of the victim customers' refinancing transactions.

9. It was a further part of the scheme, and as a result of the scheme, that defendant **RICHARD SADDLER** obtained approximately $250,000 from Omicron customers based upon his false representations and false promises, which funds were used by defendant for his own personal expenses.

C. THE WIRE TRANSMISSIONS

## COUNT 1

10. On or about March 19, 2010, within the Eastern District of Missouri, and elsewhere, for the purpose of executing the above-described scheme to defraud and to obtain money and in

attempting to do so, the defendant **RICHARD SADDLER** did knowingly cause to be transmitted by means of wire communication in interstate commerce, from Omicron customer P.K.'s TD Bank account, account number 345389XXXX, in Glastonbury, Connecticut to defendant **RICHARD SADDLER** d/b/a First Capital's West Community Credit Union account, account number 39807XXX, in St. Louis, Missouri, certain signs and sounds consisting of electronic communications, including an electronic funds transfer in the amount of $62,000, which funds were for the downpayment relative to P.K.'s purported refinancing transaction.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 2

11.     On or about November 4, 2010, within the Eastern District of Missouri, and elsewhere, for the purpose of executing the above-described scheme to defraud and to obtain money and in attempting to do so, the defendant **RICHARD SADDLER** did knowingly cause to be transmitted by means of wire communication in interstate commerce, from Omicron customer G.H.'s Kleinbank account, account number 320XXXX, in Chaska, Minnesota to defendant **RICHARD SADDLER** d/b/a First Capital's West Community Credit Union account, account number 39807XXX, in St. Louis, Missouri, certain signs and sounds consisting of electronic communications, including an electronic funds transfer in the amount of $20,000, which funds were for the payment of appraiser fees relative to G.H.'s purported refinancing transaction.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 3

12.     On or about November 17, 2011, within the Eastern District of Missouri, and elsewhere, for the purpose of executing the above-described scheme to defraud and to obtain money

and in attempting to do so, the defendant **RICHARD SADDLER** did knowingly cause to be transmitted by means of wire communication in interstate commerce, from Omicron customer L.C.'s Wells Fargo bank account, account number 589360XXXX, in San Francisco, California to defendant **RICHARD SADDLER** d/b/a Omicron Capital LLC's Central Bank account, account number 100003XXX, in St. Louis, Missouri, certain signs and sounds consisting of electronic communications, including an electronic funds transfer in the amount of $75,000, which funds were for the downpayment relative to L.C.'s purported refinancing transaction.

All in violation of Title 18, United States Code, Sections 1343 and 2.

A TRUE BILL.


FOREPERSON

RICHARD G. CALLAHAN
United States Attorney


HAL GOLDSMITH, 62501
Assistant United States Attorney